UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-23683-CIV-MORENO/OTAZO-REYES

DUCAT FLORIDA, LP,

      Plaintiff,

v.

WELLS FARGO BANK, N.A.,
Successor-in-interest to
WACHOVIA BANK, N.A.,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE came before the Court upon Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") Motion to Dismiss Second Amended Complaint (hereafter, "Motion to Dismiss") [D.E. 13] and Plaintiff Ducat Florida, LP's ("Ducat") Motion for Leave to File its Third Amended Complaint (hereafter, "Motion to Amend") [D.E. 32]. These matters were referred to the undersigned pursuant to Title 28, United States Code, Section 636 by the Honorable Federico A. Moreno, Chief United States District Judge [D.E. 28]. Upon a thorough review of the record, the parties' submissions and the applicable law, the undersigned RESPECTFULLY RECOMMENDS that the Motion to Dismiss be GRANTED WITH PREJUDICE IN PART and WITHOUT PREJUDICE IN PART and the Motion to Amend be GRANTED IN PART, as more fully set forth below.

## PROCEDURAL AND FACTUAL BACKGROUND

This action commenced on June 14, 2011 in state court. The original complaint was

brought by Ducat's predecessor in interest, Ducat 2008, LP, against Wells Fargo's predecessor Wachovia Bank, N.A. ("Wachovia") and non-diverse parties Miller Title & Escrow, LLC ("Miller Title") and BND Title Services, Inc. ("BND Title"). Thereafter, Ducat was substituted as Plaintiff and Michael Rojas and Barbara Rojas (hereafter, "the Rojases"), both of whom were officers of Miller Title and BND Title, were added as new non-diverse defendants. On October 10, 2012, Wells Fargo, as successor in interest to Wachovia, removed the action on diversity grounds, given that Ducat had failed to serve the non-diverse defendants and the time for doing so had expired.

In its Second Amended Complaint, Ducat asserts four claims against Wells Fargo:

| | |
|---|---|
| Count I: | Conspiracy |
| Count II: | Conversion |
| Count III: | Breach of fiduciary duty |
| Count IV: | Constructive fraud |

The alleged facts giving rise to these claims are as follows.

In 2006, Orestes Guirola ("Guirola") purchased a residence located at 4145 Pinta Court in Coral Gables, Florida (the "Pinta Court Home") with a loan in the amount of $984,000.00 from First Central Savings Bank (the "First Central Loan"), which was secured by a mortgage against the property. Subsequently, First Central Savings Bank retained Select Portfolio Services to administer and service the First Central Loan. In 2007, Guirola entered into a contract to sell the Pinta Court Home to Jose Baez ("Baez"). To finance this purchase, Baez arranged to borrow $1,410,500.00 from SunTrust Bank (the "SunTrust Loan"). In connection with the SunTrust Loan, Baez executed a promissory note which was secured by a mortgage against the property.

Miller Title acted as the closing agent for the sale of the Pinta Court Home from Guirola to Baez. On February 22, 2007, a wire transfer for the proceeds of the SunTrust Loan in the amount of $1,421,021.25 was deposited into Miller Title's escrow account at Wachovia. Miller

2

Title contemporaneously obtained a payoff letter from Select Portfolio Services, which stated that the outstanding balance on the First Central Loan was $1,004,467.81. On February 23, 2007, Miller Title issued a check in that same amount payable to Select Portfolio Services (the "Payoff Check") [D.E. 10-4]. On February 26, 2007, an unknown individual affiliated with Miller Title brought the Payoff Check to Wachovia for deposit and an unknown employee at Wachovia accepted the Payoff Check and deposited it into BND Title's escrow account at Wachovia. Miller Title and the Rojases then changed Guirola's address to Miller Title's address and continued making payments on the First Central Loan for 8 months.

On March 25, 2007, Miller Title recorded a deed for the Pinta Court Home in favor of Baez [D.E. 10-5]. On September 6, 2007, Miller Title recorded a bogus Satisfaction of Mortgage on the Pinta Court Home for the First Central Loan [D.E. 10-6]. In October, 2007, the Rojases and Miller Title ceased making payments to Select Portfolio Services, who declared a default and notified Guirola. On April 30, 2008, Select Portfolio Services recorded a Notice of Invalidity of Satisfaction of Mortgage on the Pinta Court Home [D.E. 10-7]. Thereafter, through a series of transactions culminating on December 10, 2012, Ducat became the assignee of the Note and Mortgage for the First Central Loan [D.E. 10-8, 10-9, 10-10].

In support of its Motion to Dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), Wells Fargo made the following arguments: that, due to non-delivery, Select Portfolio Services never had any rights in the Payoff Check, hence there can be no valid cause of action predicated on the Payoff Check;[1] that Ducat lacks standing as to all of its claims because it has no legally cognizable interest in the Payoff Check, as opposed to the Note and Mortgage for the First Central Loan; that Counts I, II and III are facially barred by the applicable four-year statute

---

[1] Although Wells Fargo makes this argument as to all of Ducat's claims, it is more properly directed to the conversion claim only, since the cases upon which Wells Fargo relies relate to this tort.

of limitations because the Payoff Check was deposited on February 26, 2007 and the state court action was commenced on June 14, 2011;[2] that the conspiracy allegations in Count I are insufficient; that Ducat failed to make a pre-suit demand or allege that such demand would be futile with respect to the conversion claim in Count II; that the claim for breach of fiduciary duty in Count III fails because Wells Fargo does not owe any fiduciary duty to Ducat; and that the constructive fraud claim in Count IV fails because Ducat's allegations fail to establish the requisite fiduciary or confidential relationship and the taking of an unconscionable advantage of such relationship.

At a hearing held on July 24, 2013, the undersigned invited supplemental briefs on the second issue raised by Wells Fargo on its Motion to Dismiss, namely, whether Ducat has a legally cognizable interest in the Payoff Check. In response, Ducat filed the Motion to Amend. One of the exhibits to the proposed Third Amended Complaint shows that, on October 27, 2011, Select Portfolio Services assigned to Ducat's predecessor all of its rights and interest as the collector of payments and servicer of the First Central Loan.[3] Wells Fargo opposes the Motion to Amend as futile on the grounds that Select Portfolio Services' assignment occurred after the applicable four-year statute of limitations had expired.[4]

## STANDARD OF REVIEW

### 1. *Motion to Dismiss*

In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable

---

[2] Ducat does not dispute that the applicable statute of limitations for these claims is four years. See Ducat's Response to Motion to Dismiss [D.E. 16 at 8].

[3] Pursuant to Fed. R. Civ. P. 10(c), "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."

[4] This argument is not applicable to the constructive fraud claim, as to which Wells Fargo has not asserted a statute of limitations defense.

to the plaintiff." Harris v. United Auto. Ins. Grp., Inc., 579 F.3d 1227, 1230 (11th Cir. 2009) (citing Spain v. Brown & Williamson Tobacco Corp., 363 F.3d 1183, 1187 (11th Cir. 2004)). To survive a motion to dismiss, a complaint "does not need detailed factual allegations," but it must contain "more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The facts in the complaint must "nudge[] the[] claims across the line from conceivable to plausible." Id. at 570. The Court must accept alleged facts as true, but it is not required to accept a plaintiff's legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "[T]he inclusion of dates in the complaint indicating that the action is untimely renders it subject to dismissal for failure to state a claim." Mann v. Adams Realty Co., Inc., 556 F.2d 288, 293 n.6 (5th Cir. 1977).

   2.   *Motion to Amend*

Rule 15 of the Federal Rules of Civil Procedure provides that leave to amend should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). However, denial of a motion to amend is proper for one of the following reason: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Foman v. Davis, 371 U.S. 178, 182 (1962).

## DISCUSSION

A. *Count II – Conversion*

In Count II, Ducat asserts a claim for conversion of the Payoff Check pursuant to Fla. Stat. § 673.4201. Wells Fargo argues that this claim should be dismissed with prejudice because: (1) the requisite delivery of the Payoff Check to the payee, a co-payee or the payee's agent cannot be satisfied; (2) Ducat has no legally cognizable interest in the Payoff Check; (3) the

claim is barred by the applicable four-year statute of limitations; and (4) Ducat failed to make a pre-suit demand or allege that such demand would be futile.

### *1. Delivery*

Fla. Stat. § 673.4201 provides, in pertinent part:

1) The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment. An action for conversion of an instrument may not be brought by:

(a) The issuer or acceptor of the instrument; or

(b) A payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a copayee.

Fla. Stat. § 673.4201. Applying this statutory provision, the Honorable Ursula Ungaro concluded in Attorney's Title Ins. Fund, Inc. v. Regions Bank, 491 F. Supp. 2d 1087 (S.D. Fla. 2007), "that Florida law precludes a payee from bringing a claim for conversion of a negotiable instrument absent delivery (actual or constructive) of the instrument to either *the payee, a copayee, or the payee's agent.*" Id. at 1095 (emphasis in original).[5] Because no such delivery was alleged or could be established, Judge Ungaro dismissed plaintiff's single count for conversion and dismissed the action. Id. at 1095-96.

The facts in Attorney's Title are strikingly similar to those in this case. There, imposters purporting to be the true owners of a property sold it to a third party. Id. at 1089. The closing agent issued a check (the "Check") to the true owners of the property (the "payees"). Id. The imposters forged the payees' endorsement and Defendant Regions Bank paid the check on the forged endorsement. Id. As noted by Judge Ungaro, the plaintiff in Attorney's Title, "[had] not

---

[5] Judge Ungaro found support for this conclusion from the plain language of § 673.4201 as well as the Comment to the statute. See Attorney's Title, 491 F. Supp. 2d at 1093-94 & n.3.

6

alleged or established actual or constructive delivery to the payees [], nor [had] it alleged or established an agency relationship between [the payees] and the individual or individuals who received delivery of the Check." Id. at 1095. Judge Ungaro further stated that she could not "conceive of a way that the Check could have been delivered to either the [payees] or their agent. . . . [W]hoever did receive delivery of the Check could not have been serving as the [payees'] agent for purposes of delivery." Id. at 1095-96.

Here, Ducat does not allege that the Payoff Check was delivered to Select Portfolio Services or that there was a copayee for the check. Rather, Ducat alleges that Miller Title placed the Payoff Check "under the power and control of its authorized representative(s) and/or employee(s) acting as Select Portfolio's agent, for deposit into Select Portfolio Service's account." See Second Am. Compl. [D.E. 10 at ¶ 70]. However, this agency allegation is merely conclusory, hence insufficient to satisfy the delivery requirement of Fla. Stat. § 673.4201(1)(b). Twombly, 550 U.S. at 555 (complaint must contain "more than labels and conclusions" to survive a motion to dismiss). Ducat's factual allegations regarding delivery are that an unknown individual affiliated with Miller Title brought the Payoff Check to Wachovia for deposit and an unknown employee at Wachovia accepted the Payoff Check and deposited it into BND Title's escrow account at Wachovia. Like Judge Ungaro in Attorney's Title, the undersigned cannot conceive of a way that an individual who brought the Payoff Check for deposit into the bank account of BND Title, whose officers were the same as Miller Title's officers, could have been acting as an agent of Select Portfolio Services, the payee who never received the Payoff Check. Like the conversion claim in Attorney's Title, therefore, the claim for conversion in Count II is subject to dismissal with prejudice on these grounds.

### 2. *Cognizable interest*

As noted above, Wells Fargo argued in its Motion to Dismiss that Ducat has no legally cognizable interest in the Payoff Check, which was issued to Select Portfolio Services. Ducat has sought leave to amend and alleged (in its proposed amended pleading and by way of an exhibit attached thereto) that Select Portfolio Services assigned to Ducat's predecessor all of its rights and interest as the collector of payments and servicer of the First Central Loan, including its rights to the Payoff Check. See Ducat's Motion to Amend [D.E. 32 at 2]; Proposed Third Am. Compl. [D.E. 32-1 at 1-26]; Exhibit C to Proposed Third Am. Compl. [D.E. 32-1 at 35-38].[6] Wells Fargo argues, however, that amendment is futile because the assignment, which is dated October 27, 2011, occurred after expiration of the four-year statute of limitation on the conversion claim. As more fully discussed below, the undersigned agrees that the limitations period for the conversion claim expired on February 26, 2011, prior to the assignment. Accordingly, Ducat's proposed amendment is futile with respect to the conversion claim.

### 3. *Time bar*

"Claims that are not filed before the running of the applicable limitations period are barred as a matter of law. The applicable limitations periods for federal causes of action founded on diversity jurisdiction are found pursuant to state law." Veltmann v. Walpole Pharm., Inc., 928 F. Supp. 1161, 1164 (M.D. Fla. 1996). In this diversity case, the applicable limitations period for Ducat's conversion claim is governed by Florida law. Id. Similarly, Florida law governs the determination of when the conversion claim accrued. Gomez v. BankUnited, No. 10-21707-CIV, 2011 WL 114066, at *5 (S.D. Fla. Jan. 13, 2011) (when a state cause of action

---

[6] Contrary to Ducat's statement that the Proposed Third Amended Complaint adds no new exhibits, see Motion to Amend [D.E. 32 at 2], Exhibit C to the proposed new pleading, which is the assignment from Select Portfolio Services to Ducat's predecessor, is not among the exhibits to the current pleading. See Exhibits A through J to Second Amended Complaint [D.E. 10-1 through 10-10].

for conversion accrues is a matter of state law). "Under Florida law, a cause of action accrues, for statute of limitations purposes, when the last element constituting the cause of action occurs. As to the tort of conversion, that act constitutes the exercise of wrongful dominion and control over the property to the detriment of the rights of its actual owner." Id. (citations omitted).

Wells Fargo argues that Ducat's conversion claim is facially time barred by Florida's applicable four-year statute of limitations. In Wells Fargo's view, the conversion cause of action accrued on February 26, 2007, the date on which the Payoff Check was deposited and more than four years before the state court action was commenced on June 14, 2011. Wells Fargo's proposition is a correct statement of the law. In Gomez, the Honorable Paul C. Huck found that a cause of action against a bank for conversion of forged checks accrued when the forger endorsed the checks and deposited them into his own account, in other words, when the forger "stole the money" from the payee. Id.

Ducat disputes that the claim is barred as a matter of law "because the complaint alleges a continuing tort which extended the 4 year statute of limitations beyond the filing date." See Ducat's Response to Motion to Dismiss [D.E. 16 at 1]. Ducat relies on its allegation that Miller Title and the Rojases continued making payments on the First Central Loan for 8 months after the February deposit of the Payoff Check to make the conversion tort continuous until October, 2007.

A continuing tort is "established by continual tortious *acts*, not by continual harmful effects from an original, completed act." Suarez v. City of Tampa, 987 So. 2d 681, 686 (Fla. 2d DCA 2008). "When a defendant's damage-causing act is completed, the existence of continuing damages to a plaintiff, even progressively worsening damages, does not present successive causes of action accruing because of a continuing tort." Id. In Suarez, the Second District Court

of Appeal found no continuing tort of trespass against a municipality that had used a property to dump garbage. Id. The court found that the cause of action for trespass accrued when the municipality "was informed about the concerns of the property owners regarding the contamination of the property" because "[a]t that point, the owners manifested their unwillingness to accept the status quo on the property." Id. at 686-87. Applying Suarez, the undersigned concludes that Ducat's conversion claim accrued when the damage-causing act, namely, the deposit of the Payoff Check, occurred on February 26, 2007. Rather than continual tortious conversion acts, the subsequent 8 monthly payments on the First Central Loan by the Rojases and Miller Title were acts of concealment.[7] For this reason, Ducat's theory that its conversion claim is a continuous tort fails. See also, Bloom v. Alvereze, 498 F. App'x 867, 876 (11th Cir. 2012) (rejecting plaintiffs' argument that their claim for conversion was continuing because the property had not been returned and noting that such failure to return property was a "continuing *inaction*, not a series of continuing acts"); Black Diamond Props., Inc. v. Haines, 69 So. 3d 1090, 1094 (Fla. 5th DCA 2011) (finding the continuing tort doctrine inapplicable to plaintiffs' claims for false and misleading advertising against a golf club and related entities because the damage-causing act was completed at the time plaintiffs purchased their club memberships in reliance on the club's misrepresentations).

### 4. *Pre-suit demand*

Under Florida law, "[a] conversion occurs when a person who has a right to possession of property demands its return and the demand is not or cannot be met. However a demand and refusal are unnecessary [where] it would be futile and the act preventing a return results in a depriving of possession and, thus equates to a conversion." Ginsberg v. Lennar Fla. Holdings,

---

[7] Ducat cannot extend the accrual date for its conversion date by operation of the delayed discovery rule because that doctrine does not apply to claims for conversion. Gomez, 2011 WL 114066, at *5 (citing Davis v. Monahan, 832 So. 2d 708, 710 (Fla. 2002)).

10

Inc., 645 So. 2d 490, 500 (Fla. 3d DCA 1994). Moreover, where the taking underlying a conversion claim is unlawful, no demand is necessary. Mullenmaster v. Newbern, 679 So. 2d 1186, 1187 (Fla. 4th DCA 1996).

Wells Fargo argues that the conversion claim is flawed because Ducat failed to make a pre-suit demand or allege that such demand would be futile. Ducat argues that it has alleged an unlawful act and, in any event, demand would have been futile. See Ducat's Response to Motion to Dismiss [D.E. 16 at 14-15]. Assuming, *arguendo*, that demand was not required or was futile, this argument has been rendered moot because Ducat's conversion claim does not meet the requirements of Fla. Stat. § 673.4201 and is time barred.

Based on the foregoing, Count II of the Second Amended Complaint fails as a matter of law and Ducat's proposed amendment of its pleading with respect to this count is futile. Hence, Count II is subject to dismissal with prejudice.

### B. *Count III – Breach of fiduciary duty*

"The elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages." Patten v. Winderman, 965 So. 2d 1222, 1224 (Fla. 4th DCA 2007). With regard to this count, Wells Fargo argues: (1) that Wells Fargo does not owe any fiduciary duty to Ducat; (2) that Ducat lacks standing because it has no legally cognizable interest in the Payoff Check; and (3) that the claim is facially barred by the applicable four-year statute of limitations.[8]

Under Florida law, "[a] cause of action accrues when the last element constituting the cause of action occurs. The last element constituting a cause for action for [] breach of fiduciary

---

[8] The first two arguments are intertwined: if Ducat has no cognizable interest in the Payoff Check, Wells Fargo does not owe it a fiduciary duty.

11

duty is the occurrence of damages." Kelly v. Lodwick, 82 So. 3d 855, 857 (Fla. 4th DCA 2011). The breach of fiduciary duty claim accrued when the Payoff Check was deposited on February 26, 2007 because that is when Select Portfolio Services was damaged by the loss of the payoff funds. As discussed in connection with the conversion claim, the Rojases and Miller Title's acts of concealment do not implicate the continuous tort doctrine. As with the conversion claim, therefore, the limitations period for the breach of fiduciary duty claim expired on February 26, 2011. For this reason, the assignment that occurred on October 27, 2011, does not confer standing on Ducat and does not give rise to a fiduciary duty owed by Wells Fargo to Ducat.

Relying on Fla. Stat. § 673.3071 for the proposition that Wells Fargo's predecessor, Wachovia, had knowledge of Miller Title's status as a fiduciary vis-à-vis Select Portfolio Services, Ducat argues that its breach of fiduciary duty claim is viable. See Ducat's Response to Motion to Dismiss [D.E. 16 at 18-20]. Regardless of Select Portfolio Services' status, however, the undersigned has determined as a matter of law that Wells Fargo does not owe Ducat a fiduciary duty and that Ducat lacks standing to bring this claim.

Based on the foregoing, Count III of the Second Amended Complaint fails as a matter of law and Ducat's proposed amendment of its pleading with respect to this count is futile. Hence, Count III is subject to dismissal with prejudice.

### C. *Count I – Conspiracy*

"[A] conspiracy cause of action in Florida accrues when the plaintiff suffers damages performed pursuant to the conspiracy." Bloom, 498 F. App'x at 876 (citing Olson v. Johnson, 961 So. 2d 356, 360 (Fla. 2d DCA 2007)). With regard to this count, Wells Fargo argues: (1) that Ducat lacks standing because it has no legally cognizable interest in the Payoff Check; (2) that the claim is facially barred by the applicable four-year statute of limitations; and (3) that the

conspiracy allegations are insufficient. The first two arguments mirror those made by Wells Fargo with respect to the claim for breach of fiduciary duty. The result is the same. The limitations period for conspiracy claim expired on February 26, 2011 and the assignment that occurred on October 27, 2011, does not confer standing on Ducat. This conclusion renders moot the issue of whether Ducat's conspiracy allegations are sufficient.

Based on the foregoing, Count I of the Second Amended Complaint fails as a matter of law and Ducat's proposed amendment of its pleading with respect to this count is futile. Hence, Count I is subject to dismissal with prejudice.

### D. *Count IV – Constructive Fraud*

"Constructive fraud exists where a duty arising from a confidential or fiduciary relationship has been abused, or where an unconscionable advantage has been taken.... Florida courts have construed the term 'fiduciary or confidential relation' as being very broad." Linville v. Ginn Real Estate Co., LLC, 697 F. Supp. 2d 1302, 1309 (M.D. Fla. 2010). The limitations period for an action "founded upon fraud [], including constructive fraud," begins to run "from the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence." Fla. Stat. § 95.031(2)(a).

Here, Ducat alleges that its predecessor in interest, Select Portfolio Services, did not discover the facts relating to the mis-deposit of the Payoff Check until the Rojases and Miller Title stopped making payments on the First Central Loan in October, 2007. Therefore, the four-year limitations period for this claim did not expire until October, 2011, well past the commencement of this action on June 14, 2011.[9] Wells Fargo has not argued that the constructive fraud claim is time barred. What Wells Fargo does argue with respect to Count IV

---

[9] See Fla. Stat. § 95.11(3)(j), which prescribes a four-year limitations period for actions founded on fraud.

is: (1) that Ducat lacks standing because it has no legally cognizable interest in the Payoff Check; and (2) that Ducat's allegations fail to establish the requisite fiduciary or confidential relationship and the taking of an unconscionable advantage of such relationship.

### *1. Cognizable interest*

As noted above, Ducat has sought leave to amend its pleading to include Select Portfolio Services' October 27, 2011 assignment of its rights and interest in the Payoff Check. In order for this assignment to confer upon Ducat a cognizable interest in the Payoff Check that is effective as to the constructive fraud claim, it had to occur within four years of Select Portfolio Services discovering the mis-deposit of the Payoff Check. According to Ducat's allegations, the discovery occurred when the Rojases and Miller Title stopped making payments on the First Central Loan in October, 2007. Construing Ducat's allegations in the light most favorable to it, Harris, 579 F.3d at 1230, the undersigned cannot conclude as a matter of law that the assignment fell outside the limitations period. Therefore, it would not be futile to grant Ducat leave to amend with respect to the constructive fraud claim.

### *2. Fiduciary relationship/unconscionable advantage*

Although the undersigned found Ducat's reliance on Fla. Stat. § 673.3071 to be misplaced with respect to its breach of fiduciary duty claim, the same argument could support the existence of a fiduciary duty from Wells Fargo's predecessor, Wachovia, to Ducat's predecessor, Select Portfolio Services. Linville, 697 F. Supp. 2d at 1309 ("Florida courts have construed the term 'fiduciary or confidential relation' as being very broad.").

Moreover, Ducat has alleged that an unknown employee at Wachovia accepted the Payoff Check and deposited it into BND Title's escrow account at Wachovia. Construing Ducat's allegations in the light most favorable to it, Harris, 579 F.3d at 1230, the undersigned

cannot conclude as a matter of law that such participation by a Wachovia employee in the mis-deposit of the Payoff Check does not rise to the level of taking an unconscionable advantage.

Based on the foregoing, the undersigned concludes that Count IV of the Second Amended Complaint can be rendered viable by Ducat's proposed amendment of its pleading; hence the amendment is not futile.

## CONCLUSION

Based on the foregoing considerations, the undersigned RESPECTFULLY RECOMMENDS that:

1. Wells Fargo's Motion to Dismiss [D.E. 13] be GRANTED WITH PREJUDICE as to the claims for conspiracy, conversion and breach of fiduciary duty set forth in Counts I, II and III.

2. Wells Fargo's Motion to Dismiss [D.E. 13] be GRANTED WITHOUT PREJUDICE as to the claim for constructive fraud set forth in Count IV.

3. Ducat's Motion to Amend [D.E. 32] be GRANTED IN PART.

4. Ducat be ALLOWED to file a Third Amended Complaint reflecting its proposed amendments, but that the amended pleading be limited to a claim for constructive fraud.

The parties have **fourteen (14) days** from the date of receipt of this Report and Recommendation within which to serve and file objections, if any, with the Honorable Federico A. Moreno, Chief United States District Judge. See Local Magistrate Rule 4(b). Failure to timely file objections shall bar the parties from attacking on appeal the factual findings contained herein. See Resolution Trust Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

RESPECTFULLY SUBMITTED at Miami, Florida, this 24th day of October, 2013.

_____<br>
ALICIA M. OTAZO-REYES<br>
UNITED STATES MAGISTRATE JUDGE

cc:    Chief United States District Judge Federico A. Moreno
       Counsel of record

16